IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) | CASE NO. 1:13 CV 2641 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| WALTER MALDONADO SANTIAGO, | ) | |
| *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION &** |
| Defendants. | ) | **ORDER** |

## Introduction

Before me[1] in this matter alleging the unauthorized interception of a satellite broadcast of a prize fight telecast[2] is a motion for summary judgment in its favor filed by plaintiff J & J Sports Productions, Inc. ("J&J").[3] The motion is supported by a brief on the merits and by two affidavits.[4] Defendant Walter Maldonado Santiago, both individually and as the alter ego of El Bori Mex Bar & Grill ("Santiago"), has filed a brief in opposition, which is not supported by any evidentiary material.[5] J&J has replied to that opposition.[6] In addition, the

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 11.

[2] ECF # 1.

[3] ECF # 23.

[4] *Id.*, at Attachments 1 (affidavit of Joseph Gagliardi) and 2 (affidavit of Jason Hannum).

[5] ECF # 25.

[6] ECF # 26.

parties have jointly moved to continue settlement discussions until after adjudication of the present motion for summary judgment.

For the reasons that follow, J&J's motion for summary judgment will be granted as set forth below.

## Facts

The Rule 56 facts properly before me here are in the uncontroverted affidavits filed by J&J. The relevant facts are as follows:

1. J&J, a closed-circuit distributor of sports programming, owned the exclusive national commercial distribution rights to the entire Miguel Cotto v. Antonio Margarito championship fight program, which was broadcast on Saturday, December 3, 2011.[7]

2. At no time did J&J sub-license the right to exhibit any part of that program to Santiago, and no other entity was authorized to transmit the program to Santiago.[8]

3. Notwithstanding that lack of authority to exhibit the program, Jason Hannum, an investigator employed to represent J&J, entered El Bori Mex Bar & Grill on December 3, 2011, and, after paying an admission fee, observed three television sets showing the fight at issue, and indeed actually watched 2-4 rounds of the fight while inside El Bori Mex Bar & Grill.[9]

---

[7] ECF # 23, Attachment 1 (Gagliardi affidavit) at ¶ 3.

[8] *Id.*

[9] ECF # 23, Attachment 2 (Hannum affidavit) at ¶¶ 1, 2, 3.

4. During the approximately 15 minutes Hannum was in El Bori Mex Bar & Grill on that evening, Hannum observed that the number of patrons inside varied from 19 to 21 people.[10]

## Analysis

**A.     Relevant law**

*1.     Summary judgment*

The court should grant summary judgment if satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[11] The moving party bears the burden of showing the absence of any such "genuine issue":

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[12]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[13] Determination of whether a factual issue is "genuine" requires consideration of the applicable

---

[10] *Id.* at ¶ 7.

[11] Fed. R. Civ. P. 56(c).

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[13] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

evidentiary standards.[14] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[15]

The court should grant summary judgment if a party who bears the burden of proof at trial establishes each essential element of his case.[16] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[17]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[18] The nonmoving party may not simply rely on its pleadings but must "produce evidence that results in a conflict of material fact to be solved by a jury."[19] Moreover, if the nonmovant presents evidence "merely colorable" or not "significantly probative," the court may decide the legal issue and grant summary judgment.[20] "In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[21]

---

[14] *Id.* at 252.

[15] *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[16] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex*, 477 U.S. at 322).

[17] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[18] *Id.* at 256.

[19] *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[20] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[21] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

In sum, proper summary judgment analysis entails the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[22]

### 2. *Unauthorized interception of satellite signals*

Title 47 of the United States Code § 553 provides, in pertinent part, that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."[23] In addition, Title 47 of the United States Code § 605 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not be titled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substances, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted; shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.[24]

---

[22] *Anderson*, 477 U.S. at 250.

[23] 47 U.S.C. § 553(a)(1) (emphasis added).

[24] 47 U.S.C. § 605(a).

These statutes provide statutory protection against the theft of communications such as the program in the instant case.[25]

"Any person aggrieved ... may bring a civil action in a United States district court or in any other court of competent jurisdiction."[26] "[T]he term 'any person aggrieved' shall include any person with proprietary rights in the intercepted communication by wire or radio[.]"[27]

To establish liability under 47 U.S.C. § 553 or § 605 J&J must establish that Santiago unlawfully exhibited, published or divulged a privileged communication, and the signal transmitting that communication was delivered to the intercepting party by way of a satellite or cable transmission.[28] These are strict liability statutes and thus it is not necessary for J&J to establish "willfulness" concerning the exhibition in order to establish liability.[29]

---

[25] *See*, *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008); *California Satellite Systems v. Seimon*, 767 F.2d 1364 (9th Cir. 1985).

[26] 47 U.S.C. § 553(c)(1); 47 U.S.C. § 605(e)(3)(A).

[27] 47 U.S.C. § 605(d)(6). Section 553 does not define "aggrieved party"; however, in light of the significant overlap between §§ 553 and 605, the definition from § 605 is instructive. *See also*, *J & J Sports Productions, Inc. v. Rezdndiz*, No. 08 C 4121, 2008 WL 5211288, *2 (N.D. Ill. Dec. 9, 2008) (holding that plaintiff, a company that provides substantially similar programming to that of J&J herein, was a person aggrieved under 47 U.S.C. § 553).

[28] *See*, 47 U.S.C. § 553; 47 U.S.C. § 605.

[29] *See*, 47 U.S.C. § 605(e)(3)(C)(iii); 47 U.S.C. § 553(c)(3)(C).

*3.     Application of relevant law*

Santiago has not provided any Rule 56 evidence to controvert the evidence supplied by J&J. As such, the unchallenged evidence is that Santiago exhibited the program at issue here without authorization, and thus subjected himself to liability under the statute. As J&J points out, the statute creates a "strict liability" offense with no "good faith" defense available.[30] Moreover, as J&J also indicates, decisions in both this District and in the Southern District of Ohio have found liability on similar evidence.[31]

Accordingly, for these reasons, I grant J&J summary judgment as to Santiago's liability for violating 47 U.S.C. §§ 605 and 553.

J&J further asks for statutory damages and enhanced statutory damages under 47 U.S.C. § 605 in the amount of $30,000 plus all attorney fees, as well as costs and expenses.[32] As J&J further observes, it seeks a "flat sum" award, rather than an award based on the number of patrons present.[33] In support, it cites the district court's award of $20,000 in the Eastern District of Michigan case of *Joe Hand Promotions, Inc. v. Zia*,[34] which was

---

[30] ECF # 23 at 6 (citing cases).

[31] *Id.* (citing *J&J Sports Productions, Inc. v. Ortiz*, No. 3:10 CV 2027, 2011 WL 3111878 (N.D. Ohio July 26, 2011); *Joe Hand Promotions, Inc. v. RPM Management Co. LLC*, No. 2:09-cv-553, 2011 WL 1043560 (S.D. Ohio March 18, 2011).

[32] *Id.* at 7, 19.

[33] *Id.* at 11-12.

[34] *Joe Hand Promotions, Inc. v. Zia*, No. 07-12466, 2008 WL 495325 (E.D. Mich. Feb. 20, 2008).

comprised of $10,000 for violating § 605 and $10,000 for violating § 553.[35] J&J contends entitlement to an enhancement of the statutory maximum award of $10,000 under § 605(e)(3)(c)(i)(II) because of factors such as the size of the urban area where the program was exhibited, the number of persons in the bar, and the number of televisions in use.

Magistrate Judge Knepp in *J&J Sports Productions, Inc. v. Ortiz* addressed a similar argument from J&J, which appears to include the same cases cited as examples, and unfortunately at least one similar error of fact.[36] Judge Knepp found in *Ortiz* that the facts did not establish an especially egregious violation. He noted that the program in question was shown over one television to about six people in an area near the Cedar Point amusement park during the slow non-summer months.[37] Thus he concluded that, even though the defendant committed the violation willfully and for purposes of commercial advantage, the damages were appropriately set at the full statutory amount of $10,000, with no increase.[38]

Indeed, J&J itself states in a different place of its brief that, even if it were determined that Santiago's actions had only "limited impact" because they occurred in a relatively small

---

[35] *Id.*, at *2. J&J here states multiple times that it does not seek damages for any § 553 violation, but only for the violation of § 605. ECF # 23 at 7, 12 n.8, 14 n.9.

[36] *Ortiz* noted that J&J overstated the number of televisions involved in the case at bar, claiming that the program was shown on 15 televisions when the evidence was that it was shown on only one. *Ortiz*, 2011 WL 3111878, at *2. Here, in discussing why *Haddock* was similar, J&J also overstated the number of televisions involved, asserting that the program here was seen on eight televisions, when, in fact, it was shown on only three. ECF # 23 at 16.

[37] *Ortiz*, 2011 WL 3111878, at *2.

[38] *Id.*

urban area in front of about 20 people, there "is ample authority to award $10,000 in statutory damages" in light of the fact "that the program was being broadcast on all three televisions."[39]

Consistent with that reasoning, and with Judge Knepp's observations in *Ortiz*, I find that while J&J has fully established its right to the full maximum amount of $10,000 in statutory damages for this willful violation under § 605,[40] I further find that enhanced damages here would be excessive and unjust in this case. Similar to the location at issue in *Ortiz*, Lorain is, as J&J acknowledges, a relatively small city that has been constantly declining in population for 40 years, and so I find that the actions here had a relatively limited impact. Accordingly, J&J will be awarded $10,000 in statutory damages.

As to fees and expenses, which 47 U.S.C. § 605(e)(3)(B)(iii) permits the court to award to the prevailing party,[41] I further find that J&J has submitted no proof to substantiate any award. J&J is thus directed to file a motion for recovery of any recoverable fees and costs by October 17, 2004, and Santiago is to file any opposition by October 24, 2014.

## Conclusion

For the reasons stated, J&J is awarded summary judgment as to Santiago's violation of 47 U.S.C. §§ 553 and 605 and is awarded $10,000 in statutory damages under § 605 for

---

[39] ECF # 23 at 14.

[40] As previously noted, J&J seeks damages under § 605 only. See footnote 35 above.

[41] *See*, *Ortiz*, 2011 WL 3111878, at *3.

that violation. Moreover, J&J is to move for any award of fees and expenses by October 17, 2014, and supply all necessary evidence to substantiate the amount sought. Santiago is to file any opposition to the award sought by October 24, 2014.

    IT IS SO ORDERED.

Dated:  October 9, 2014                          <u>s/ William H. Baughman, Jr.</u>
                                                     United States Magistrate Judge